UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEODOCIO RUBIO, SR., <br><br> Plaintiff, <br><br> v. <br><br> GENARO RAMIREZ, et al., <br><br> Defendants. | Case No.: 1:13-cv-0199-LJO-JLT (PC) <br><br> FINDINGS AND RECOMMENDATION OF DISMISSAL OF THE FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND <br><br> (Doc. 10) |

Plaintiff Teodocio Rubio, Sr., ("Plaintiff") is a state prisoner proceeding pro se in a civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1 and 10). Plaintiff alleges he was improperly denied parole. The court previously screened Plaintiff's complaint and dismissed it with leave to amend. Now, despite being previously advised of the requirements of Fed. R. Civ. P. 8(a), Plaintiff submits his 130-page first amended on June 20, 2013. (Doc. 10). Nonetheless, the Court screens the complaint according to 28 U.S.C. § 1915(e)(2)(B).

For the reasons set forth below, the Court finds that Plaintiff again fails to state a complaint and recommends the first amended complaint be **DISMISSED without leave to amend.**

**I.    SCREENING REQUIREMENT**

Under 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a case in which the plaintiff proceeds in forma pauperis if the court determines that the case "fails to state a claim on which relief may be granted" or is "frivolous." Similarly, dismissal must also be done on these grounds notwithstanding

1

payment of any filing fee. Id. A claim is frivolous "when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).

## II. PLEADING AND VENUE STANDARDS

### A. Fed. R. Civ. P. 8(a)

"Pro se documents are to be liberally construed" and "'must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). "[They] can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id. Under Federal Rule of Civil Procedure 8(a), "[a] pleading that states a claim for relief must contain: (1) a short and plaint statement of the grounds for the court's jurisdiction, . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." Fed. R. Civ. P. 8(a). Each allegation must be simple, concise, and direct. Fed. R. Civ. P. 8(d)(1). While a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (internal quotation marks and citations omitted).

In analyzing a pleading, the Court sets conclusory factual allegations aside, accepts all non-conclusory factual allegations as true, and determines whether those non-conclusory factual allegations accepted as true state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 676-684 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." (Id. at 678) (internal quotation marks and citation omitted). In determining plausibility, the Court is permitted "to draw on its judicial experience and common sense." Id. at 679.

### B. 42 U.S.C. § 1983

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that

2

the violation was proximately caused by a person acting under color of state law. *See* Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation of which the plaintiff complains. Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir. 1981) (*quoting* Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)).  42 U.S.C. § 1983 does not create substantive rights, but rather serves as a vehicle to protect federal rights which have been established elsewhere. Graham v. Connor, 490 U.S. 386, 393-394 (1989).

### III. PLAINTIFF'S COMPLAINT

Plaintiff is a state prisoner incarcerated at California Substance Abuse Treatment Facility and State Prison ("CSATF-SP"), located in Corcoran, California, serving an indeterminate life sentence with the possibility of parole. (Doc. 10 at 6).  Plaintiff sues all Defendants in their individual and official capacities, seeking declaratory relief and ten million dollars in punitive damages. Id. at 4, 10. Plaintiff fails to clearly set forth a plain statement of the facts, nonetheless, the Court has read the pleading and Plaintiff's complaint is summarized, to the best of the Court's ability, as follows:

At a parole eligibility hearing on October 27, 2009, Plaintiff's attorney informed Defendants Ramirez, O'Hara, and Denvir that a certain report concerning his prior criminal record was false. (Doc. 10 at 8).  It appears, however, that Defendant Ramirez advised the parole board of the allegations contained in the allegedly false report on October 27, 2009, and October 2, 2012. Id. at 9. Defendant Ramirez insisted that he had evidence to prove the allegations contained in the report. Id. Accordingly, Defendants Labhan, Kevorkian, O'Hara, and Denvir found Plaintiff ineligible for parole. Id. at 10-11.  The false report about Plaintiff's prior criminal history seemingly provided a basis for their decision to deny Plaintiff parole. Id. at 11.

### IV. DISCUSSION AND ANALYSIS.

#### A. Eleventh Amendment

Plaintiff *again* brings suit against Defendants in their official and individual capacities. *See* (Doc. 10 at 5).  However, naming an employee in his or her official capacity is "in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 165-166

(1985); Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). The Eleventh Amendment provides immunity to any State in any type of lawsuit "... in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." Will, 491 U.S. at 71. Therefore, the Court **RECOMMENDS** that the first amended complaint against Defendants in their official capacities be **DISMISSED**.

### B. Fifth Amendment

In Claim I, Plaintiff alleges that Defendants violated his Fifth Amendment right against self-incrimination.[1] (Doc. 10 at 17). Under the Fifth Amendment of the United States Constitution, a witness cannot be compelled to testify against himself in a criminal proceeding. U.S. CONST. amend. V; Minnesota v. Murphy, 465 U.S. 420, 426 (1984). The prohibition against self-incrimination also applies to "any other proceeding, civil or criminal, formal or informal, where the answers [to interrogations] might incriminate [a party] in further criminal proceedings." Murphy, 465 at 426. To prove a Fifth Amendment violation, a plaintiff must establish that (1) the elicited testimony carried a threat of incrimination, and (2) the penalty suffered was essentially compulsion. U.S. v. Antelope, 395 F.3d 1128, 1134 (9th Cir. 2005). A "real and appreciable" risk of incrimination may exist where a party must reveal the entirety of his or her past crimes as part of a court-mandated treatment program and such revelations could land in the "hands of prosecutors." See Antelope, 395 F.3d at 1135.

The second element of the Fifth Amendment test analyzes "whether the government has sought to impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself." Antelope, 395 F.3d at 1135. In determining which penalties amount to unconstitutional compulsion, "[c]ourts must decide whether the consequences of an inmate's choice to remain silent are closer to the physical torture against which the Constitution clearly protects or the *de minimis* harms against which it does not." McKune v. Lile, 536 U.S. 24, 26 (2002)(participation in a therapy program that required full disclosure of sexual history while offering

---

[1] Plaintiff does not specify against which Defendants he asserts this claim, nor does he do this as to any of his claims for that matter. Thus, the Court presumes that Defendant lodges each complaint against all Defendants. This factor, however, is immaterial to the Court's analysis, as all Defendants are entitled to absolute immunity.

inmates minimal incentives to participate did not amount to compelled self-compelled incrimination).

Plaintiff again indicates that Defendants requested that he admit to certain facts concerning his prior criminal history, which, under Antelope, would most certainly qualify as revelations that could subject Plaintiff to future prosecution. While Plaintiff alleges that parole board members refused to grant his parole because he refused to admit the false allegations, (Doc. 10 at 11), the inescapable fact is that Plaintiff never testified against himself. Thus, exactly how the Fifth Amendment was violated is not clear. Instead, Plaintiff is serving a life sentence for conviction of other crimes and parole is only a *possibility*, not a guarantee. Thus, the "harm" which Plaintiff alleges—the failure to grant him parole—is speculative. Thus, Plaintiff has failed to state a claim under the Fifth Amendment and the Court recommends that this Claim I be **DISMISSED.**

### C. Fourteenth Amendment

In Claim II, Plaintiff asserts a Fourteenth Amendment procedural due process claim against Defendants for the denial of his parole. (Doc. 10 at 19-20). The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). A plaintiff alleging a procedural due process violation must first demonstrate that he was deprived of a liberty or property interest protected by the Due Process Clause and then demonstrate that the procedures attendant upon the deprivation were not constitutionally sufficient. Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 459-60 (1989); *See also* McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002). A protected liberty interest may arise under the Due Process Clause itself or under a state statute or regulation. Wilkinson v. Austin, 545 U.S. 209, 221-22 (2005).

A state may create a liberty interest in parole where the language of the state statute creates an "expectation of parole." Senteno v. California, 705 F. Supp. 2d 1175, 1189 (E.D. Cal. 2009), *citing* Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 7, 11-14 (1979). The Ninth Circuit has held that the language of the California's parole statute, Cal. Pen. Code § 3041(b), creates a constitutionally protected "liberty interest" which demands the application of procedural due process in the course of determining an inmate's suitability for parole. Senteno v. California, 705 F. Supp. 2d 1175, 1190 (E.D. Cal. 2009). However, this state created "liberty interest" is a limited in scope to an

inmate being entitled to receive parole *only after* the California statutory standards for parole have been met. Swarthout v. Cooke, 131 S. Ct. 859, 862-63 (2011).[2]

In the context of parole, adequate due process occurs in California where an inmate "is allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied." Swarthout, 131 S.Ct. at 862 (*citing* Greenholtz v. Inmates of Neb. Penal and Correctional Complex, 442 U.S. 1, 16, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979)). "The Constitution ... does not require more." Swarthout, 131 S.Ct. at 862.

As advised previously, it is axiomatic to Claim II that Plaintiff must demonstrate he is otherwise suitable for parole according to the California statutory standards. Rather, nowhere does Plaintiff allege he met the statutory requirements for parole or there is any reason to conclude that the only reason he was denied parole was his refusal to admit the allegations in the questioned report.

To the contrary, at the parole hearing, the board noted Plaintiff had been instructed at his earlier hearing that he needed to "get self-help and continue positive programming" in addition to remaining discipline free. (Doc. 11 at 23-24.) The Board noted Plaintiff had not engaged in self-help classes or educational classes during the period of review and had not received any positive chronos. Id. at 24-25. The psychologist who conducted Plaintiff's psych evaluation expressed concerns about Plaintiff's lack of coping mechanisms to assist him in refraining from the use of alcohol if released. Id. at 28-29. Likewise, the doctor opined Plaintiff was a "moderate risk for violent recidivism" and in the "medium category for general recidivism." Id. The doctor concluded, "Mr. Rubio presents a relatively moderate risk for violence in the free community." Id. at 30.

Moreover, at the conclusion of the 2009 hearing, the Board noted that Plaintiff had admitted the underlying criminal act in the past but was now denying it, which the Board concluded, was evidence of his failure to take responsibility for his actions. (Doc. 11 at 66-68) Moreover, the Board found troubling the fact that Plaintiff failed to engaged in self-help programming to address his past alcohol abuse problem and his anger management issues which seemed to be causes of his committing

---

[2] It is noted that the majority of cases addressing an inmate's deprivation of procedural due process claim for determination of parole ineligibility are brought under the guise of the federal habeas corpus statute. *See e.g.*, Swarthout, 131 S.Ct. 859. However, Plaintiff may challenge state parole procedures as a violation of procedural due process under 42 U.S.C. § 1983. *See e.g.,* Wilkinson v. Dotson, 544 U.S. 74 (2005).

the underlying crime.  Id.  Likewise, the Board expressed concern over his failed to adjust to the institution as evidenced by his failure to engage in completing his education or obtaining vocational training.  Notably, the Board expressed, "you don't have to accept [responsibility for] the offense" but noted he refused to take responsibility for the role alcohol abuse has played in his criminal history.  Id. at 72-73.  The Board continued, "you're not much of a different person than when you committed this crime, as far as your mental attitude, your insight into the criminality, why it happened . . . So, the point I want to make to you, sir, is I'm encouraging you to reassess some of your thinking, because you do have the possibility of being here until you die.  The rest of your li8fe, 'cause you have the possibility of parole, but at the rate you're moving, as far as getting these criteria taken care of, you're not getting there in any way, shape or form in a quick way."  Id. at 74.  The Board told Plaintiff of the actions he must take to be considered suitable for parole.  Id. at 73-74.  The Board stated,

> You have a negative psychiatric report, finding you a moderate risk. You have shown no remorse. Your program is -- institutional program is marginal, at best. And those are the reasons for the choice of the three-year denial. We recommend that you remain disciplinary free. No more 115s, no 128s.  Upgrade yourself through therapy and self-help. Try to work on getting a GED, if at all possible. Or learn Braille, whatever it may be. But educate yourself or upgrade yourself in some way. Don't just sit and do time. And chances are, you won't have the opportunity for a vocation, based on your limitations, but, if at all available, find something where you can upgrade yourself, such as learn Braille or something along those lines as your vision diminishes. Frankly, sir, as I've indicated, this is an odd case in many, many ways. Just some strange things, nuances to it. But I certainly can see if you remain stubborn and insist you don't need self-help and therapy and simply don't make any efforts to get it, insist that everybody's wrong about the crime and the District Attorney forced these people into testifying, they'll be enough in and around this case that you'll probably be denied three years after three years after three years.

Id.

Then at the 2012 hearing, the Board noted Plaintiff had been found guilty of a rules violation in which he told a correctional officer "fuck you," when the officer told him he could not have a three-way telephone call.  (Doc. 10 at 78-79)  On the other hand, Plaintiff had completed a three-week workshop on anger management in 2010.  Id. at 79.  Once again, the psychologist reported that Plaintiff continued to pose "a moderate risk level for reoffending in the free world."  Id. at 81.  Plaintiff denied he had ever been in trouble except for minor offenses and denied that he had actually committed any of the crimes for which he was convicted before the underlying crime.  Id. at 68-76.  Likewise, he denied alcohol was ever a problem for him despite that he was convicted of three DUIs

and lost his driver's license. Id. at 66-68, 89-91. Plaintiff denied that before the underlying offense, there was anything he needed to do to improve himself. Id. at 92.

In denying him parole once again, the Board noted the egregious nature of the underlying offense and the fact the received the rules violation for cursing at the correctional officer. (Doc. 10 at 113-116) This was of great concern given Plaintiff's conduct of combative behavior with police officers. Id. at 115-120. The Board was concerned also that Plaintiff denied the entirety of his criminal history which demonstrated a lack of remorse. Id. at 115-116. Likewise, the Board was concerned Plaintiff denied ever having a problem with alcohol which, the Board found, was a cause of his criminal history. Id. at 116-119. The Board noted Plaintiff had "engaged in very little positive programming" while in prison and was troubled by his refusal to discuss how he had changed. Id. at 118. The Board summed up the denial as, "Your lack of programming, your denials of culpability with respect to your criminal history, and your dishonesty speak to your danger today. We believe you are dangerous today." Id. at 120.

Thus, the evidence attached to Plaintiff's complaint demonstrates the failure to admit a threat to an officer in Mexico played little if any part in the Board's decision in 2009 or in 2012 to deny parole. Plaintiff's speculative deprivation does not arise to a constitutional liberty interest and it is beyond a doubt that Plaintiff cannot state a due process claim. Therefore, the Court recommends that Claim II be **DISMISSED.**

D.     **Eighth Amendment Claim**

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)). However, "[s]uits challenging the validity of [a] prisoner's continued incarceration lie within "the heart of habeas corpus," whereas a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody."[3] Ramirez v. Galaza, 334 F.3d

---

[3] An exception to this rule exists where a prisoner alleges that the state deprives a state-created liberty interest in an "unexpected manner" or imposes an "atypical and significant hardship in relation to the ordinary incidents of prison life." Ramirez, 334 F.3d at 860. This exception is presently inapplicable.

850, 856 (9th Cir. 2003)(*quoting* Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973).

Plaintiff does not set forth any facts in Claim III – or in any of his other claims for that matter. In any event, the Court presumes that Plaintiff avers that Defendants subjected him to cruel and unusual punishment when they denied him parole. While Plaintiff contends that he is not challenging the validity of his incarceration, he is in fact continuing to challenge the denial of his parole. Such a contention is more appropriately brought under a writ of a habeas corpus. As Plaintiff again challenges his continued incarceration, the Court **FINDS** no grounds on which he could possibly state an Eighth Amendment claim. Therefore, the Court recommends Claim III be **DISMISSED**.[4]

### E.    Absolute Immunity of Parole Board Members

In the Ninth Circuit, "parole board members are entitled to absolute immunity when they perform quasi-judicial functions." Swift v. California, 384 F.3d 1184, 1189 (9th Cir. 2004)(citations and internal quotations omitted). Quasi-judicial functions or those which are "functionally comparable to tasks performed by judges" exist where parole board members adjudicate whether "to grant, deny, or revoke parole." Swift, 384 F.3d at 1189; *see also* Sellars v. Procunier, 641 F.2d 1295, 1303 (9th Cir. 1981). A parole officer's absolute immunity extends to matters which are directly or "integrally related to an official's decision to grant or revoke parole," but do not extend to those matters where a parole officer performs investigative or administrative matters. Swift, 384 F.3d at 1189-1190. This rule ensures that adjudicators are not required to anticipate lawsuits from every dissatisfied parole applicant. Sellars, 641 F.2d at 1303.

The Court previously advised Plaintiff that parole board members are entitled to absolute immunity when performing quasi-judicial functions. Nonetheless, Plaintiff asserts an identical claim against Defendants Labahn, Kevorkian, O'Hara, and Denvir as he did in his original complaint. Specifically, Plaintiff seeks liability against these Defendants for considering certain evidence presented by Defendant Ramirez in Plaintiff's parole board hearings. (Doc. 10 at 7, 9-10). The consideration of evidence and adjudication of decisions are integral aspects of parole board member's

---

[4] Plaintiff curiously sets forth Claim IV pursuant to 28 U.S.C. § 1915(e)(2)(B). Plaintiff does not provide, and the Court cannot find, any legal authority or cause of action that Plaintiff could assert under this statutory provision. Thus, the Court construes Claim IV as argument that his first amended complaint should not be dismissed.

quasi-judicial function. Thus, permitting him to amend his claim would be futile. Therefore, the Court recommends this claim be **DISMISSED**.

   **F.**  **Absolute Prosecutorial Immunity**

  The United States Supreme Court has unequivocally determined that state prosecutors are absolutely immune from liability under 42 U.S.C. § 1983 where a prosecutor conducts activities that are "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 424-430 (1976). Were a prosecutor subject to liability under 42 U.S.C. § 1983, such a threat would undermine the prosecutor's ability to perform his or her duties in enforcing criminal law. Imbler, 409 U.S. at 424-425. Taking this rationale a step further, the Ninth Circuit extends absolute immunity to California state prosecutors who participate in parole hearings. Brown v. California Dep't of Cor., 554 F.3d 747, 751 (9th Cir. 2009). In fact, California state statute, 15 CAL.Code Regs. § 2030 *et seq,* explicitly sets forth a state prosecutor's role in a parole hearings. Brown v. California Dep't of Cor., 554 F.3d 747, 751 (9th Cir. 2009). California statute permits prosecutors to expound upon the facts of a case and opine as to the appropriate disposition of a matter before a parole board. 15 CAL. Code Regs. § 2030(d)(2); Brown, 554 F.3d at 751.

  Here, Plaintiff *again* asserts a claim against Defendant Ramirez, a state prosecutor, for attesting to certain facts at Plaintiff's parole board hearing. (Doc. 10 at 9-10). Plaintiff again fails to allege facts to support a claim that Defendant Ramirez acted outside the scope of his prosecutorial function. *See generally*, (Doc. 10). Thus, Plaintiff's claims against Defendant Ramirez are barred by the doctrine of absolute immunity. Given that Plaintiff was previously advised of this standard, the Courts finds that Plaintiff is unable to state a claim. Therefore, Court recommends this claim be **DISMISSED.**

## FINDINGS AND RECOMMENDATIONS

  Accordingly, the Court **HEREBY RECOMMENDS** that the first amended complaint (Doc. 10) be **DISMISSED without leave to amend.**

  These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **14 days after**

**being served with these findings and recommendations**, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  **The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order**. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **July 1, 2013**                                                   **/s/ Jennifer L. Thurston**
                                                                                          UNITED STATES MAGISTRATE JUDGE